IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GANNON LASSEIGNE,

     Plaintiff,

v.

MARY JO WHITE, as Chairman of the
Securities and Exchange Commission,

     Defendant.

CIVIL ACTION FILE

NO. 1:14-cv-3156-TWT-CMS

## REPORT AND RECOMMENDATION

This matter is before the Court on the "Motion to Dismiss Amended Complaint" filed by the Securities and Exchange Commission ("SEC" or "Defendant") on March 25, 2015.   [Doc. 30].   Plaintiff Gannon Lasseigne ("Plaintiff") responded in opposition to the Motion on April 13, 2015 [Doc. 33], and the SEC replied [Doc. 38].  For the reasons that follow, **I RECOMMEND** that Defendant's Motion to Dismiss the Amended Complaint [Doc. 30] be **GRANTED IN PART and DENIED IN PART**.

## I.     BACKGROUND

Plaintiff filed this action against his employer, the SEC, on October 1, 2014, alleging violations of the Americans with Disabilities Act and the Americans with Disabilities Act Amendment (collectively the "ADA"), the Rehabilitation Act, and

the Privacy Act.  [Doc. 1].  Defendant filed a motion to dismiss the original complaint [Doc. 10], and in response, Plaintiff filed an amended complaint (the "Amended Complaint") [Doc. 29].  After the filing of the Amended Complaint, Defendant's motion to dismiss the original complaint was denied as moot.  [Doc. 27, 31].

In the 54-page Amended Complaint, Plaintiff contends that while working at the SEC, "he was discriminated and retaliated against based upon his participation and opposition to the discrimination of a fellow employee" and was subjected to a hostile work environment.  [Doc. 29].  He also alleges that his privacy rights were violated based on subsequent investigations into his suitability for federal employment.  [Id.].  Defendant again has moved to dismiss, arguing that all claims asserted in the Amended Complaint are subject to dismissal.  [Doc. 36].

## II.    PLAINTIFF'S ALLEGATIONS

The following facts are alleged in the Amended Complaint and accepted as true for the purpose of Defendant's Motion to Dismiss:

Plaintiff is a staff accountant in the SEC's Atlanta Regional Office.  [Doc. 29, Am. Compl. ¶¶ 7, 32]. He has a close personal relationship with his co-worker Carole Solloway, describing himself as Ms. Solloway's "significant other."  [Id. ¶¶ 38, 138].  Ms. Solloway suffers from Post Traumatic Stress Disorder ("PTSD"),

a condition that causes her to have panic attacks and flashbacks. [Id. ¶¶ 45-47]. When Ms. Solloway's work environment began to "trigger strong and adverse PTSD symptoms," Ms. Solloway requested various accommodations from the SEC, and Plaintiff became a "vocal and vociferous supporter of Ms. Solloway's need for a disability accommodation for her psychological condition." [Id. ¶¶ 47-49, 52]. As early as March 2011, Plaintiff "began to accompany Ms. Solloway to meetings with her first and second line managers . . . to discuss how the situation . . . was affecting Ms. Solloway and her need for an accommodation." [Id. ¶ 49]. Plaintiff also expressed to management his "opposition to discrimination, retaliation, conflicts of interest, abuse of authority, misconduct, and the hostile work environment and harassment experienced by both Ms. Solloway and [himself]." [Id. ¶ 52]. Ms. Solloway ultimately filed charges of disability discrimination against the SEC and identified Plaintiff as a witness in connection with that proceeding. [Id. ¶¶ 38, 61-65].

Plaintiff contends that in August of 2012, while he was actively supporting Ms. Solloway in her efforts to obtain an accommodation, Plaintiff's immediate supervisor, Anthony Russell, unfairly recommended that Plaintiff be terminated based on Plaintiff's alleged verbal abuse of another employee. [Am. Compl. ¶ 75, 80]. Plaintiff then became the subject of an Office of Personnel Management

3

("OPM") background investigation into his suitability for federal employment.[1]

[Id. ¶ 67].   As part of the OPM investigation, Mr. Russell was interviewed on

October 15, 2012, at which time Mr. Russell "lied about Plaintiff's performance,"

and made "false statements" regarding Plaintiff's marital history, possible spousal

abuse, and child support issues.  [Id. ¶¶ 74, 81, 82, 85-87].  Plaintiff alleges that

because of Mr. Russell's statements to the OPM investigator, the OPM

investigators expanded their investigation into Plaintiff's personal life, questioning

Plaintiff's neighbors and others about these sensitive personal matters.  [Id. ¶ 83].

In December 2012, the SEC wrote to Plaintiff, stating that the OPM

background investigation raised questions concerning Plaintiff's suitability for

federal employment.  [Am. Compl. ¶¶ 91-93].  The letter noted that Plaintiff had

failed to disclose foreign travel and the existence of his children on a

questionnaire, that Plaintiff had a pattern of insubordination towards management,

and that Plaintiff had been verbally abusive and hostile toward other staffers and

co-workers.  [Id. ¶¶ 92, 93].  The letter required Plaintiff to respond to the OPM's

---

[1]  OPM is not a party in this litigation, and Plaintiff has not pled any facts to establish that the SEC controlled OPM's background investigation.  To the extent Plaintiff's claims against the SEC (the sole defendant in this case) are based on OPM's actions, such claims are subject to dismissal.

findings.  [Id. ¶ 94].  Plaintiff responded to the allegations on February 13, 2013, and ultimately no disciplinary actions were taken against him.  [Id. ¶¶ 108-109].

At roughly the same time the OPM investigation was initiated, the SEC's Office of Human Resources ("OHR") began an investigation into Plaintiff's behavior.  [Am. Compl. ¶¶ 68-70].  The OHR investigation was conducted without Plaintiff's knowledge and while Plaintiff was out of the office on medical leave for spine surgery.  [Id. ¶¶ 71, 72].  According to the Amended Complaint, the questions asked during the investigation amounted to a "fishing expedition" and a "witch hunt."  [Id. ¶ 71].

Thereafter, the Office of the Inspector General ("OIG") entered the investigation, advising Plaintiff that it was conducting an official administrative inquiry regarding possible misconduct to determine if administrative action was warranted.  [Am. Compl. ¶ 115].  Plaintiff was notified that he would be interviewed and asked specific questions regarding the performance of his official duties and regarding conduct that might affect his capacity to carry out those duties.  [Id.].  Throughout the course of the investigation, the OIG interviewed approximately twenty people concerning Plaintiff's conduct, and Plaintiff was subjected to a five-hour interview.  [Id. ¶¶ 116-117].  No disciplinary action was

taken against Plaintiff as a result of either the OHR or the OIG investigation.  [Id. ¶ 121].

In February 2013, Plaintiff received his final 2012 performance review, which was negative, with an overall summary rating of 2.3 on a scale of 1 to 5 and "unacceptable" scores in areas including "Interpersonal Skills."  [Am. Compl. ¶¶ 132, 134 144].  This was in contrast to previous years when Plaintiff had received better ratings (a 3.8 in 2010 and a 3.6 in 2011) and had received special awards.  [Id. ¶¶ 127, 137, 139-141].  As a result of the negative review, Plaintiff was placed on a Performance Improvement Plain ("PIP") on February 28, 2013. [Id. ¶¶ 135-136, 146].  The PIP noted that Plaintiff "was involved in an incident where he left his office and followed an Examination Manager down the office hallway to the manager's office, while yelling at the manager."  [Id. ¶ 150].  The PIP subsequently ended successfully, and no action was taken against him as a result of the PIP.  [Id. ¶ 151].

Contending that the background investigations, the poor 2012 performance review, and the PIP were unfair and were tied to his advocacy on behalf of Ms. Solloway, Plaintiff initiated counseling with the SEC's Office of Equal Employment Opportunity ("OEEO") on March 18, 2013, and thereafter filed a Formal Complaint on June 27, 2013.  [Am. Compl. ¶¶ 14, 18; Doc. 30-1, Final

Agency Decision dated July 16, 2014 ("Decision") at 1].  On November 26, 2013, the OEEO ultimately accepted the following claims for investigation: "Whether [Plaintiff] was subjected to discrimination based on his age (DOB 12/07/1971), race (Caucasian), and in retaliation (participation as a witness in a prior EEO matter)" when he received an unacceptable performance rating on February 6, 2013, received a PIP on February 28, 2013, and was interviewed on July 8, 2013 by the OIG in connection with an investigation.[2]  [Id. ¶¶ 25, 26].

The OEEO issued its Report of Investigation (ROI) on April 17, 2014, and issued its Decision on July 16, 2014.  [Am. Compl. ¶¶ 28-29].  In the Decision, the OEEO concluded that Plaintiff failed to show by a preponderance of the evidence that the SEC's actions were a pretext for age or race discrimination or in retaliation for prior EEO activity.  [Decision at 12].

---

[2]   The OEEO originally accepted claims of age, race, and disability discrimination, as well as a retaliation claim, relating to his unacceptable performance rating on February 6, 2013, and subsequent PIP.  [Am. Compl. ¶ 21]. On October 10, 2013, the OEEO issued a "Corrected Acceptance of Complaint" correcting the date of the issuance of the PIP and removing the disability discrimination claim.  [Id. ¶¶ 23, 24].  On November 26, 2013, the OEEO made a final amendment to the allegations accepted for investigation, adding the allegations regarding the OIG interview and investigation.  [Id. ¶¶ 25, 26].

In the Amended Complaint, Plaintiff alleges that Defendant's actions violated the Rehabilitation Act[3] (Count One) and the Privacy Act (Count Two). Plaintiff appears to allege three variations of his Rehabilitation Act claim: hostile work environment, retaliation, and retaliation due to association.[4]   [Am. Compl. ¶¶ 174-181].

## III.   DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012). The Supreme Court has explained this standard as follows:

---

[3]   Plaintiff also refers to the ADA in the Amended Complaint.  Because Plaintiff is a federal employee, his claims relating to disability retaliation are properly addressed under the Rehabilitation Act, not the ADA.  The Rehabilitation Act "prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability."  Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000).  Discrimination claims brought under the Rehabilitation Act are governed by the same standards as those brought under the ADA.  Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000).

[4]   Paragraphs 175 and 176 of the Amended Complaint allege two theories of recovery under the Rehabilitation Act – hostile work environment (¶ 175) and retaliation (¶ 176).  It appears, however, that based on the subtitle of Count One in the Amended Complaint, Plaintiff may also be seeking to assert a third Rehabilitation Act theory through a claim of "retaliation due to association."  [Am. Compl. p.50].

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted); Resnick v. AvMed, Inc., 693 F.3d 1317, 1325 (11th Cir. 2012).  Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level," and "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  All well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff.  Ellis v. Cartoon Network, Inc., 803 F.3d 1251, 1255 (11th Cir. 2015). The court, however, need not accept as true plaintiff's legal conclusions, including those couched as factual allegations.  Iqbal, 556 U.S. at 678.

Defendant argues that the Amended Complaint is due to be dismissed in its entirety.  [Doc. 30].  With regard to Count One – violations of the Rehabilitation Act – Defendant argues: (1) that the retaliation claim was not exhausted or, alternatively, this it should be dismissed because the causation element of the prima facie case is absent; (2) that the hostile work environment claim was not exhausted; and (3) that the "retaliation due to association" claim was not exhausted or, alternatively, it should be dismissed because no facts to support such a claim

were raised either in the Amended Complaint or during the administrative proceeding. [Doc. 30 at 12-21]. Defendant moves to dismiss Count Two – violations of the Privacy Act – arguing that conducting an internal background investigation and internally disclosing the contents of the investigation did not violate the Privacy Act. [Doc. 30 at 21-25].

## A.    Plaintiff's Rehabilitation Act Claims (Count One)

The Rehabilitation Act protects people with disabilities as well as people who testify or participate in another individual's EEO proceeding.    The Rehabilitation Act incorporates the anti-retaliation provision from the ADA and prohibits retaliation based on the fact that an individual "testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this chapter" 42 U.S.C. § 12203(a), and makes it unlawful to intimidate or interfere with any individual on account of his "having aided or encouraged any other individual in the exercise or enjoyment of any right granted or protected by this chapter" 42 U.S.C. § 12203(b).  See Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec., 410 F. App'x 243, 245 (11th Cir. 2011) (unpublished).  "This anti-retaliation provision is similar to Title VII's prohibition on retaliation."  Id. (citing Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir.

10

1997)).  Accordingly, Plaintiff's retaliation claims under the Rehabilitation Act are evaluated under the same framework used for Title VII retaliation claims.  Id.

A plaintiff asserting a private right of action under the Rehabilitation Act must satisfy the exhaustion of administrative remedies requirement in the manner prescribed by Title VII.  42 U.S.C. § 2000e-5(e); Doe v. Garrett, 903 F.2d 1455, 1461 (11th Cir. 1990); see also Shiver v. Shertoff, 549 F.3d 1342, 1344 (11th Cir. 2008) ("The remedies, procedures, and rights of Title VII are available to plaintiffs filing complaints under the Rehabilitation Act").  A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. Gregory v. Ga. Dept. of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004); see also Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970).[5]  The purpose of the exhaustion requirement is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer.  Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999).  "[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but . . . allegations of

---

[5]  Decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

new acts of discrimination are inappropriate." <u>Gregory</u>, 355 F.3d at 1279-80 (internal quotations and citations omitted).

### 1.   <u>Retaliation</u>

Defendant first argues that Plaintiff is barred from asserting any retaliation claims under the Rehabilitation Act because the disability discrimination allegation was removed from the final list of issues to be investigated by the EEO with no objection from Plaintiff.  [Doc. 30 at 12-13].  This argument, however, fails with respect to Plaintiff's retaliation claim.  Plaintiff alleged in his EEO proceeding that he was retaliated against, not because he was disabled, but because he acted in support of Ms. Solloway's disability discrimination claim.  This retaliation issue clearly was included in the final list of claims for investigation by the OEEO.  [See Am. Compl. ¶¶ 25, 26].  It is evident that the EEO charge included (and the OEEO investigated) Plaintiff's complaint that he was retaliated against because of his advocacy on behalf of Ms. Solloway, who, in turn, had raised a claim of disability discrimination under the Rehabilitation Act.[6]  It is also evident that the OEEO

---

[6]   For example, the section of the Decision titled PROCEDURAL BACKGROUND states that one of the issues for investigation was whether Plaintiff was subjected to retaliation based on his "participation as a witness in a prior EEO matter."  [Decision at 1].  The section of the Decision titled FACTS states that Plaintiff alleged that he received the "Unacceptable" rating "because he participated as a witness for a fellow employee, Carole Solloway . . . in an

understood that Plaintiff (who did not claim to be disabled) was alleging retaliation based on his actions to assist someone else in stating a disability claim, and the OEEO made a point to correct the issue to reflect that Defendant was not, himself, disabled. [Am. Compl. ¶¶ 22, 23]. Thus, even though the words "disability (mental)" were removed from the charge, the following issue remained: "retaliation (participation as a witness in a prior EEO matter)." [Id. ¶¶ 25, 26]. Accordingly, Plaintiff exhausted his administrative remedies with respect to his claim that he was retaliated against based on his efforts to participate in Ms. Solloway's EEO matter alleging violations of the Rehabilitation Act.

Defendant argues that even if Plaintiff did exhaust his administrative remedies with respect to his retaliation claim based on his participation in Ms. Solloway's EEO proceedings, this claim still fails because Plaintiff fails to show causation between the alleged protected activity and alleged adverse actions necessary to state a prima facie case of retaliation. [Doc. 30 at 16-17].

To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relationship between the two

---

unrelated EEO matter." [Id. at 3]. Additional references to Plaintiff's participation in Ms. Solloway's EEO proceedings are noted throughout the Decision.

events.  Walker v. Sec'y, U.S. Dep't of Air Force, 518 F. App'x 626, 627 (11th Cir. 2013)(unpublished).  When, as here, there is no direct evidence of a retaliatory motive for the employer's adverse action, a plaintiff may prove causation "by showing close temporal proximity between the statutorily protected activity and the adverse employment action."  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).  The temporal proximity must be "very close" to show causation; in the Eleventh Circuit, a three month proximity between a protected activity and an adverse employment action has been held to be insufficient to create a jury issue regarding causation.  See Walker, 518 F. App'x at 628; Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006).

Defendant focuses on Plaintiff's actions in 2011 to argue that the time between those actions and the alleged adverse employment actions in 2013 is too large to establish a causal connection between the protected activity and the adverse action.  But Defendant does not address paragraph 164 of the Amended Complaint, which alleges that Plaintiff made additional written complaints to management as late as December 26, 2012.  Given Plaintiff's allegation that he received his negative performance review in February 2013, it appears that Plaintiff may have alleged a "very close" temporal proximity between at least some of his protected activity and the allegedly adverse actions.  Accordingly, I

14

**RECOMMEND** that Defendant's Motion to Dismiss Plaintiff's retaliation claim under the Rehabilitation Act be **DENIED**.

　　2.　　Hostile Work Environment

Plaintiff, however, did not exhaust his administrative remedies with respect to his hostile work environment claim under the Rehabilitation Act.  Plaintiff argues that he should be allowed to pursue this theory of recovery even though it was not raised at the administrative level because this claim could reasonably be expected to grow out of the retaliation claim that was asserted in the charge and dependent on the same facts.  [Doc. 33 at 9-11].  However, the law does not permit a claimant to allege retaliation in his charge and then bring a hostile work environment claim in a subsequent lawsuit.  See Green v. Elixir Indus., Inc., 152 F. App'x 838, 841 (11th Cir. 2005) (unpublished) (EEOC charge asserting racially discriminatory termination could not support a claim of discrimination based on hostile work environment); Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n. 8 (11th Cir. 1994) (affirming district court's conclusion that a plaintiff's failure to promote claims were barred where the plaintiff only asserted an unequal pay claim in her charge); see also Chacko v. Patuxent Inst., 429 F.3d 505, 511 (4th Cir. 2005) (employee failed to exhaust administrative remedies where lawsuit was based on hostile work environment but the charge alleged only discriminatory failure to

promote, demotion, and retaliation); <u>Dandy v. United Parcel Serv., Inc.</u>, 388 F.3d 263, 270 (7th Cir. 2004) (employee's unequal pay and hostile work environment claims were not properly before the court where the employee failed to mention these claims in her EEOC charge alleging denied promotions based on race and gender, and retaliation for filing pervious EEOC charges); <u>Mitchell v. City & Cty of Denver</u>, 112 F. App'x 662, 666-68 (10th Cir. 2004) (unpublished) (employee's charge that asserted claim for discrimination and retaliation could not reasonably have been expected to lead to a hostile work environment claim).

Here, Plaintiff does not even suggest that he was subjected to a hostile work environment in his administrative charge, and this claim was not addressed in the EEO Decision.   [Am. Compl. ¶¶ 25, 26; Doc. 30-1, Decision].   Moreover, the hostile work environment claim in the Amended Complaint does not amplify, clarify, or more clearly focus the allegations in the EEO charge.   The EEO charge does not identify a violation of the Rehabilitation Act as an investigated claim; rather, the OEEO investigated whether Plaintiff was subject to discrimination based on his age and/or race, and whether he faced retaliation for participation as a witness in a prior EEO matter.   The hostile work environment claim constitutes a new allegation of discrimination, one that Plaintiff did not exhaust.   Thus, this claim should be dismissed.   <u>See</u> <u>Dowlatpanah v. Wellstar Health Sys., Inc.</u>, No.

1:05-cv-2752-WSD-RGV, 2007 WL 639875, at *5-6 (N.D. Ga. Feb. 26, 2007). Accordingly, **I RECOMMEND** that Plaintiff's hostile work environment claim under the Rehabilitation Act be **DISMISSED** based on a failure to exhaust administrative remedies.

      3.    <u>Retaliation Due to Association</u>

Defendant argues, and I agree, that to the extent Plaintiff seeks to recover based on a theory that he was retaliated against not because of his own actions, but because of his close personal relationship with Ms. Solloway, such a claim fails due to Plaintiff's failure to exhaust his administrative remedies prior to filing suit. Plaintiff was clear in the administrative proceedings and in his Amended Complaint that he felt that the retaliation he suffered was due to his own actions in support of Ms. Solloway.  He did not allege any facts to indicate his belief that he was retaliated against merely because he was Ms. Solloway's "significant other." Accordingly **I RECOMMEND** that Plaintiff's "retaliation due to association" claim under the Rehabilitation Act, to the extent Plaintiff intended to raise such a claim, be **DISMISSED**.

**B.**    **Plaintiff's Privacy Act Claim (Count Two)**

In Count Two of his Amended Complaint, Plaintiff contends that Defendant violated the Privacy Act, 5 U.S.C § 552a, by improperly gathering and

17

disseminating confidential information regarding Plaintiff's personal life. [Am. Compl. ¶¶ 179-180]. Defendant argues that the Privacy Act claims should be dismissed because conducting an internal background investigation, and internally disclosing the contents of that investigation, do not violate the Privacy Act. [Doc. 30 at 21-25]. In response, Plaintiff specifies that his claim is for a violation of 5 U.S.C. § 552a(e)(2) which provides: "Each agency that maintains a system of records shall . . . collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs . . . ." Plaintiff argues that Defendant's investigation into his personal life and work life went beyond what was necessary by law, and that he should be entitled to discovery to determine what the applicable guidelines were for the investigation and to determine if they were followed in his case. (Doc. 33 at 27-29).

To obtain relief under subsection (e)(2) of the Privacy Act, a plaintiff must establish that: (1) the agency failed to elicit information directly from the plaintiff to the greatest extent practicable; (2) the violation of the Act was intentional or willful; and (3) this action had an adverse effect on the plaintiff. See Cardamone v. Cohen, 241 F.3d 520, 525-26 (6th Cir. 2001). Here, Plaintiff alleged that (1) the SEC conducted the questioning at a time when Plaintiff was out of the office, and

18

therefore did not elicit information directly from him to the greatest extent possible; (2) the purpose of the investigation was to retaliate against him, and his supervisor deliberately lied and provided false information to the investigators causing them to interview people who otherwise would have been outside the scope of the investigation; and (3) he suffered a variety of adverse employment actions that were tied, in one way or another, to the investigation.  [Am. Compl. ¶¶ 71-73, 81-83, 85-87].  These allegations are sufficient to state a claim under the Privacy Act.

Nevertheless, Defendant argues that the investigations were properly conducted and that certain exceptions may apply.  [Doc. 30 at 23-25; Doc. 38 at 13].  It appears that discovery is needed on this claim.  Accordingly I **RECOMMEND** that Defendant's motion to dismiss Plaintiff's Privacy Act claim be **DENIED**.

### IV.   CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Defendant's Motion to Dismiss the Amended Complaint [Doc. 30] be **GRANTED IN PART and DENIED IN PART**.

I **RECOMMEND** that Defendant's Motion to Dismiss Plaintiff's claims for hostile work environment and retaliation due to association under the

Rehabilitation Act be **GRANTED**.  To the extent Plaintiff seeks to raise any claims under the ADA, such claims should also be **DISMISSED**.

I **RECOMMEND** that Defendant's Motion to Dismiss Plaintiff's claims of (1) retaliation under the Rehabilitation Act based on Plaintiff's actions in connection with Ms. Solloway's EEO proceeding and (2) violation of the Privacy Act., 5 U.S.C. § 552a(e)(2), be **DENIED** and that these claims be allowed to proceed.

So **REPORTED** and **RECOMMENDED** this 21st day of December, 2015.


CATHERINE M. SALINAS
United States Magistrate Judge

20